16211

HARDEE v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA
(53 S. E. (2d) 861)

*Messrs. Royall & Wright and Emil T. Cannon,* of Florence, *for Appellant-Respondent,*

*Messrs. Woods & Woods,* of Marion, *and Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent-Appellant,*

May 4, 1949.

BAKER, Chief Justice.

On August 27, 1935, appellant-insurer issued two identical policies of insurance upon the life of the respondent-Hardee, each policy providing for a base $2,500.00 Ordinary Life insurance, plus additional 20 Year Term insurance of $3,420.00. Each of the policies provided for waiver of premium both on the Life and Term portions thereof in case the insured, prior to reaching the age of 60 years, should become totally disabled for a continuous period of six months or more, and during the continuance of such disability.

We will hereafter refer to only one policy of insurance since they are identical in every respect, and any conclusion herein reached will be applicable to both. They were so treated in the trial Court and on appeal to this Court.

The contract of insurance, or policy, is made up of two parts forming the one contract, to wit, the Ordinary Life for a base of $2,500.00, and a "Supplemental Agreement attached to and made a part of (the) Policy" for the 20 Year Term insurance of $3,420.00, commencing on page 9 of the contract or policy.

On page 1 of the policy and typed at the bottom thereof is the following:

"Convertible Income Agreement
Providing for $3,420.00 Term Insurance
Making Total Insurance $5,920.00
Disability Waiver."

Beginning near the bottom of the first page of the Supplemental Agreement, but page 9 of the contract or policy of insurance, is this stipulation:

*"Privileges of Conversion*

"At any time within ten years from the Original Date and when no default in premium payment exists, this Agreement may be exchanged upon proper surrender, but without evidence of insurability, for a Life or Endowment policy for an amount (in multiples of $1,000.00) not greater than the amount of Term Insurance then in force under this Agreement. One of the two following bases may be chosen in effecting this exchange:—

"(1) Provided the age of the Insured at the date of exchange does not exceed the insuring age of 65 the new Policy may be made effective from the date of surrender of this Agreement, on the policy form then used by the Company and at the premium rate of the Company then in force for the age attained by the Insured. The first year's premium will be reduced by the reserve on the amount of Term insurance so exchanged, computed in accordance with the American Experience Table of Mortality with 3 per cent interest;

"or (2) The new Policy may be made effective from the Original Date, on the policy form then used by the Company and at the premium rate of the Company then in force for the age of the Insured at that Date, conditioned upon payment of the difference in premiums for the two plans of insurance on the amount of insurance converted, and for that part of the Term which has already elapsed, with compound interest at the rate of 6 per cent per annum.

"If it is desired to have the new policy include a provision for Double Indemnity Benefits or for Total and Permanent Disability Benefits, evidence of the Insured's good health and insurability in all other respects satisfactory to the Company must be furnished."

At the foot of page 9 of the contract, appearing in bold and large type—is: Convertible Income Agreement," and immediately thereunder is printed in smaller type, "Term Insurance for Twenty Years," the word "Twenty" having been inserted by typewriter. And on page 11 of the contract or policy, at the foot thereof, appearing in large bold type is:

"Total And Permanent Disability
Waiver of Premium."

On August 24, 1944 (within approximately nine years from the "Original Date" of the policy), the respondent-Hardee requested the appellant-Insurance Company to convert the $3,420.00 Term portion of insurance to an Ordinary Life policy in the same amount, offering to pay the difference in the premiums as calculated by the appellant-Insurance Company. The latter named refused to convert the Term portion of the insurance into an Ordinary Life policy such as was the $2,500.00 portion of the policy, embodying a premium waiver clause if the insured should become totally disabled for a continuous period of six months or more, and during the continuance of such disability, unless the respondent-Hardee would furnish it with evidence of his good health and insurability. The insured was unable to furnish such evidence, and to the contrary frankly admitted that he was not an insurable risk, and could not obtain other insurance. The position of the insurer was and is that waiver of premium is a "Disability Benefit," and that under its contract or policy, it had the legal right to refuse to issue a new policy containing such a waiver clause. The appellant-Insurance Company was willing to convert the Term insurance to Ordinary Life insurance without the waiver of premium benefit. Of course the policy as was then in force (and so

far as the record discloses is still in force) contains such a waiver clause both as to the Life and Term insurance.

On November 21, 1944, the respondent-Hardee instituted actions against the appellant-Insurance Company in the Civil Court of Florence, in each action demanding damages actual and punitive in the sum of $3,000.00, for the alleged fraudulent breach of its contracts, and finally resulting in verdicts for nominal actual damages, practically by direction of the Court, in the sum of $12.00, and $1,500.00 punitive damages, in each case.

The complaint alleged that the appellant-Insurance Company fraudulently breached its contract to convert the Term insurance of the policy to Life insurance, without the respondent-Hardee being required to furnish evidence of his insurability. Appellant-Insurance Company, in its answer and throughout the trial denied any fraud and denied any breach whatever, asserting that the contract involved provided for conversion of the Term insurance to Life insurance without requiring evidence of insurability, only if the conversion should be to Ordinary Life or endowment insurance without any disability benefits; and that the contract specifically required evidence of insurability if the converted insurance should include disability benefits in the form of waiver of premiums; and that the respondent-Hardee, while failing to furnish evidence of his insurability, had demanded that the converted insurance include certain disability benefits, to wit: disability waiver of premiums to which he was not entitled under the contract.

At the close of all the testimony the appellant-Insurance Company moved for the direction of a verdict in its favor generally, or failing in that, for a direction of verdict as to punitive damages. These motions were overruled as appears from what we have hereinbefore stated.

Both the Appellant-Respondent-Insurance Company, and the Respondent-Appellant-Hardee have appealed from the holdings and rulings of the trial Judge, the former alleging

error in the construction of the insurance policy to the effect that the Term insurance provided was convertible without evidence of insurability, and the latter alleging error in charging the jury to the effect that the insured could only recover nominal actual damages.

The trial Judge held that the contract was plain and unambiguous, and that the appellant-Insurance Company breached its contract in refusing to convert the Term insurance to Life insurance with premium waiver clause unless furnished by the respondent-Hardee with evidence of insurability. While we concur in the result of such holding, after an analysis of the contract of insurance, which is a long and complex document, yet it is our opinion that the contract is ambiguous. But as stated by the trial Judge, the result is the same as to actual damages, whether he based his construction of the contract on the ground that it was plain and unambiguous, or that it was ambiguous; and it was of course the duty of the trial Judge to construe the contract.

In *Haselden v. Standard Mutual Life Association*, 190 S. C. 1, 5, 1 S. E. (2d) 924, 926, it is aptly stated:

"It is a cardinal principle of insurance law in this State, requiring no citation of authority, that a policy or contract of insurance is to be considered liberally in favor of the insured, and strictly as against the company. Stated more fully, the rule is, that where by reason of ambiguity in the language employed in a contract of insurance, there is doubt or uncertainty as to its meaning, and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the company, the former will be adopted."

In this connection see *Beckett v. Jefferson Standard Life Insurance Co.*, 165 S. C. 481, 164 S. E. 130; *Walker v. Commercial Casualty Insurance Co.*, 191 S. C. 187, 4 S. E. (2d) 248; *Smith v. Sovereign Camp W. O. W.*, 204 S. C. 193, 28 S. E. (2d) 808.

It seems to us that the language in the paragraph of
the contract of insurance relating to "Privileges of
Conversion," wherein at one place it is stated that
"this Agreement (the portion of the Policy controlling the
conversion of the Term insurance into a Life policy) may
be exchanged upon proper surrender, *but without evidence
of insurability*" (emphasis added), and at another place, "If
it is desired to have new policy include a provision for
Double Indemnity Benefits or for Total and Permanent Dis-
ability Benefits, *evidence of the Insured's good health and
insurability* (emphasis added) in all other respects satisfac-
tory to the Company must be furnished" is so ambiguous
that there is created considerable doubt and uncertainty, and
while fairly susceptible of the respective interpretations
placed thereon by the insured and the insurer, the contract
having been prepared by the insurer, it should be construed
liberally in favor of the insured and strictly against the in-
surer.

It is proper that at this point we pass upon the exceptions
of respondent-appellant-Hardee in which he raises the issue
that the trial Judge was in error in charging the jury that
he could recover only nominal actual damages for the breach
of contract.

The situation is that the insured bought and paid for
a valuable right which was denied him. The refusal
to convert this Term insurance into Life insurance
with a waiver of premium clause in accord with his then
existing $2,500.00 Life insurance contract was an invasion
of his legal right, and the law presumes actual damages. Of
course, the amount of actual damages cannot be arrived at
with mathematical precision, but that is true of a great many
verdicts for actual damages, especially in tort actions in
"death cases." As was said in *Rogers v. Jefferson Standard
Life Ins. Co.*, 182 S. C. 51, 188 S. E. 432, 434, which was
an action for the wrongful cancellation of an insurance pol-
icy: "But after all is said and written, it remains true that

the facts of each case are necessarily of potent influence in determining the measure of damages." One measure of actual damages in the case under discussion is the difference between the value of a converted policy, written in accordance with the contract, and the converted policy, as offered to be written by the insurer.

Under the latter policy there would be no waiver of premiums, while under the former there would be.

As stated by counsel, there are two contingencies for the consideration of the jury, (1) that the insured would be totally and permanently disabled before reaching the age of 60 (under the terms of the policy, the disability must occur or commence before the policy anniversary on which the age of the Insured at nearest birthday is sixty years in order to entitle him to premium waiver), and (2) how long would the insured live. These contingencies could have been properly passed on by the jury, upon taking into consideration the insured's age and physical condition, and his probable expectancy of life. And the jury may also consider the fact that the insured cannot procure other insurance, and that if he lives to the age of 62, without a conversion of the Term insurance to a Life policy, the Term portion of the policy will expire, and no amount will be payable thereunder upon his death, and that the beneficiaries named in the policy would derive no benefit from the protection the insured undertook to assure them. We are, of course, not attempting to herein limit all of the contingencies to be submitted for the consideration of the jury, as for example, that it is conceivable that the insured may not suffer any actual monetary loss. But the actual damages suffered by the insured cannot be declared as a matter of law to be only nominal, and the amount thereof, if any, should have been left to a finding by the jury. Therefore, as to this phase of the case, there should be a new trial.

The remaining issue necessary to be passed upon is whether the trial Judge was correct in submitting to the

jury the question of punitive damages. The construction which the Court has placed on the contract of insurance makes moot the issues of the admission of certain testimony.

The complaint of the respondent-Hardee alleges that the breach of the contract by the appellant-Insurance Company was fraudulent, and that hence he is also entitled to punitive damages.

In the recently decided case of *Smyth v. Fleischmann,* 214 S. C. 263, 52 S. E. (2d) 199, 203, this Court had occasion to state that "in a long line of cases beginning with *Welborn v. Dixon,* 70 S. C. 108, 49 S. E. 232, 3 Ann. Cas. 407, * * * it has been consistently held that where the complaint states a cause of action for breach of contract, allegations charging the defendant with a fraudulent intent or purpose in breaching the contract do not give rise to a right to recover punitive damages; that such damages are recoverable only where, in addition to or independently of the fraudulent intent that brought about the breach there was some fraudulent act on the part of the defendant *accompanying the breach.*" Even in the willful and fraudulent breach of a contract only actual damages may be recovered, unless the fraudulent breach is accompanied by a fraudulent act.

A fraudulent act is of like character to a fraudulent intention, but imports some definite act looking to the perpetration of the fraud. The only act of the appellant-Insurance Company which it is claimed constituted a fraudulent act is the fact that after the respondent-Hardee had informed it that he was uninsurable as a risk for life insurance, it sought to have him sign a certificate of insurability. But the concluding paragraph of the form certificate of insurability the insured was requesed to sign plainly sets forth that in addition to the statement of good health and insurability made by the insured, the appellant-Insurance Company would have the right to satisfy itself as to his insurability and health.

If the appellant-Insurance Company bona fide believed that under the contract of insurance it had the right to refuse to convert the Term portion of the policy to a Life policy without the waiver of premium clause, which right it stoutly maintains it had, unless furnished with a certificate of good health and insurability by the insured, and that even then it had the further right to satisfy itself thereabout through independent investigation, then under the construction of the contract by this Court, there has not been a fraudulent breach thereof. See *Harwell v. Mutual Benefit Health & Accident Association,* 207 S. C. 150, 35 S. E. (2d) 160, 161 A. L. R. 183, and the authorities therein cited, particularly *Ex Parte Hollmann,* 79 S. C. 9, 15, 60 S. E. 19, 22, 21 L. R. A., N. S., 242, 14 Ann Cas. 1·105; *Gwynn v. Citizens' Telephone Co.,* 69 S. C. 434, 48 S. E. 460, 67 L. R. A. 111, 104 Am. St. Rep., 819; and *Walker v. Glenn,* 124 S. C. 501, 117 S. E. 723.

We are of opinion that there is no evidence in this case of a fraudulent breach or a fraudulent act accompanying the breach of the contract of insurance, and that it was therefore error to submit to the jury the issue of punitive damages.

Reversed and remanded to Civil Court of Florence for a new trial as to actual damages.

STUKES and TAYLOR, JJ., concur.

OXNER and FISHBURNE, JJ., dissent.

OXNER, JUSTICE, (dissenting).

I find no ambiguity in the provisions of the policy involved in this controversy. In my opinion they are susceptible to only one reasonable construction namely:· If the insured desires to exercise the privilege of conversion and to incorporate in the new policy a clause providing for waiver of premium or other disability· benefits in the event of total or permanent disability, he must furnish satisfactory evidence of insurability. Hence there was no breach of the contract

and the court below, I think, erred in refusing appellant's motion for a directed verdict. Upon this ground I respectfully dissent.

FISHBURNE, J., concurs.