13473

WILKES *ET AL.* v. CAROLINA LIFE INS CO.

(165 S. E., 188)

*Mr. J. H. Glenn,* for appellants,

. *Messrs. Tobias & Turner* and *Gaston, Hamilton & Gaston,* for respondent,

August 17, 1932.

The opinion of the Court was delivered by Mr. Justice Bonham.

In 1928 Tena Crenshaw took out a policy of insurance in the Fidelity Life Insurance Company, upon the life of Archie Wilkes, of which she was the beneficiary. Some time in 1929 Carolina Life Insurance Company took over this policy from the Fidelity Company, assumed the obligation of carrying out the contract of insurance, and thereafter received the premiums on the policy. Tena Crenshaw took out other policies of insurance in Carolina Life Insurance Company on the lives of Lizzie Hughes, Fred McCullough, Maggie Shiver, Virginia McCullough, Susie Craig, in all which policies she was the beneficiary, and on all of which policies

she paid the premiums. She also took out a policy in the same company on her own life.

She brings six actions against the Carolina Life Insurance Company, one on each of the policies on the life of another and in which she is beneficiary, and in each action joins with herself the person who is insured in that particular policy. The issues in all of the actions are the same, and the disposition of one will determine all. The allegations in all of the complaints are substantially the same.

The complaint is unduly long and abounds in unnecessary allegations and matters of argument. For the purpose of considering this appeal, it is necessary only to state that for cause of action the complaint alleges, upon information and belief, that the district manager of the defendant, at Chester, had conceived the design of bringing about the cancellation of these policies and of receiving no more premiums thereon, in order to enrich the defendant company and to defraud and cheat the plaintiffs herein of all of their valuable rights in said policies. And, in order to effect his purpose, refused to accept premiums when tendered, and refused to call for the collection of premiums as was his custom, and prevented any one from being at the office in Chester to receive premiums when carried there. That by this means, and in pursuance of his fraudulent design, he brought about a cancellation of the policies in which plaintiff was named beneficiary.

The defendant demurred to the complaint on three grounds:

First. "* * * In that it appears upon the face of the complaint that there could be no legal cancellation of the policy on the date alleged, *for the reason that the premiums are alleged to have been paid, and not refunded, and any notice of,* or attempt at cancellation * * * would be ineffective."

Second. If insured had died during the period of the policy, the defendant would at all times have been liable.

Third. That it appears from the allegations of the complaint that, the premiums having been paid, and retained by the defendant, and not refunded, or tendered back, the policy as a matter of law could not have been cancelled by the notice of, or attempt at, cancellation.

At the same time the defendant made a motion to strike the complaint in the twenty-six particulars set out in the notice of the motion.

The demurrer and the motion to strike were heard by Hon. W. H. Grimball, Circuit Judge, then presiding in the Sixth Circuit. He sustained the demurrer and granted the motion to strike the complaint in twenty of the twenty-six specifications upon which the motion was predicated.

From these orders the plaintiffs appeal.

The order sustaining the demurrer has reference to but one policy, that which was on the life of Archie Wilkes. It completely ignores all the allegations of the complaint which relate to the other policies, and the refusal of the defendant's collector and district manager to accept the premiums tendered. Despite the fact that there had been struck from the complaint twenty irrelevant allegations, there remain in it many others which show that the action is not predicated *alone* upon the action of defendant's agent in relation to this one policy, but upon the agent's conduct in relation to all of the policies in the defendant company in which Tena Crenshaw is the beneficiary. The action is not brought to compel the insurance company to accept the premiums; it is not brought to enjoin the company from declaring this policy canceled, or forfeited; nor is it brought to reinstate the policy. It is brought to recover damages for the inception and putting in operation of a fraudulent design to compel the forfeiture or lapse of all of these policies, by refusing to accept the premiums, and thereupon to declare them canceled for the non-payment of premiums. What difference does it make if the premiums on this policy were paid for all of November, 1930? The order

sustaining the demurrer declares that the complaint alleges that "all premiums which were due on the policy for the month of November, 1930, had been paid, and that the company had received payment of all premiums, which kept the policy in full force and effect through November." Hence there was no cancellation and no cause of action was stated.

But the exact language of Paragraph 8 of the complaint, after it was deleted by the order to strike, is this: "That on or about November 12, 1930, all premiums due on this policy for the month of November, 1930, had been paid, and · that all premiums due * * * by plaintiff Tena Crenshaw, in defendant's company *were p'aid up to date."* (Italics added.) (Viz.: November 12, 1930.) "That the collector or district manager of defendant company called, as was his custom * * * at the house of plaintiff, Tena Crenshaw, for the weekly premiums *on this and other policies.* That plaintiff had already paid on the policy the premiums for November in advance. That * * * she tendered the agent $1.50 for one week's premium due either the week of November 12, 1930, or November 19, 1930." That the agent refused to received them and left the house "in an angry mood."

It is easily deducible that the complaint is intended to allege that the plaintiff contended that she had paid the premiums on this policy for November in advance, which contention the agent denied; that therefore he refused to accept the other premiums, and set about his purpose to have all the policies canceled.

The complaint alleges, further, that a few days after November 12, 1930, a representative from defendant's district office at Rock Hill called upon plaintiff and informed her that the Chester district agent had advised the Rock Hill district manager that he, the Chester district manager, was not going to accept any more premiums from the plaintiff, Tena Crenshaw. That he was not going to call at the home of plaintiff for these premiums, nor was he going to

receive any more premiums from her when sent to the office at Chester, and that he was going to have the home office to lapse the *policies*. The Rock Hill representative then proposed that he have the policies *revived*, and that plaintiff send the weekly payments by mail to the Rock Hill office. This she declined to do, but informed him that she expected the company to revive her *policies* which had been wrongfully canceled. Paragraph 12 escaped the process of deletion, and as it stands alleges: "That subsequent to the above incidents and during the month of November, 1930, and before the policies were in arrears, she was advised by numerous people that the Chester district manager had stated that all seven of Tena. Crenshaw's policies had been lapsed by the home office on account of a disagreement between him and the plaintiff, Tena Crenshaw."

The complaint further alleges the design to lapse all of the policies by refusing to accept any more premiums and by making it impossible for plaintiff to pay them at the Chester district office.

It is manifest that there is running throughout the complaint, as the cause of action, the underlying allegation that it was the purpose of defendant's agent to force a lapse of the policies, all of them, by refusing to collect or accept any more premiums. Concede, if you will, that this policy was alive during the month of November, 1930. Is it alive now? If it is not, is its demise due to the wrongful acts of defendant? These things are alleged in the complaint and make questions for the jury to answer.

The complaint is verbose and far from easy of construction, but we think it states a cause of action. If it is lacking in clarity, it is open to defendant to move to have it made more definite and certain.

It was error to sustain the demurrer.

There was no error in sustaining the motion to strike the complaint. More of it might well have been eliminated.

It is the judgment of this Court that the order sustaining the demurrer be reversed, and that the order striking the complaint be affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.