14181

PACK v. METROPOLITAN LIFE INS. CO.

(182 S. E., 747)

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellant,

Mr. *Andrew J. Bethea,* for respondent,

November 29, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent was insured in the defendant company; the premium on the policy being payable weekly. She alleges in this action that while so insured it was the agreement with, and the custom of, the agent of the insurance company to call at her residence every week for the collection of the premium; that on the 20th day of February, 1933, she had become ill, and was in a serious and precarious state of health; that on that day the agent of the company called at her home at Hyatt Station and collected the premiums then due, and then and there conceived the fraudulent design of causing her policy to lapse, and thereafter put into effect his wicked and fraudulent design by willfully refusing to come and collect the premiums on the policy, which she was at

all times ready and willing to pay; that the policy was thus lapsed and its benefits lost to plaintiff, as well as the premiums she had paid thereon. She asks for damages actual and punitive in the sum of $3,000.00.

The answer admits the issuing of the policy to plaintiff on the 4th day of July, 1932, in the sum of $116.00; denies that any premiums have been paid thereon since the 20th day of February, 1933; denies all allegations not specifically admitted or explained; that defendant's agents made numerous attempts to locate plaintiff after the 20th of February, 1933, in order to collect the premiums on the policy, by calling at the residence of the plaintiff at Hyatt Station, but failed to find her; that the agent endeavored, but was unable to find plaintiff's new address; that whatever damage plaintiff has sustained, which damage is denied, was caused by the failure of the plaintiff to notify the defendants, its servants and agents, of her new address.

Defendant moved to strike from the complaint certain parts thereof, which motion was refused.

The case was heard by Judge Rice and a jury. At the conclusion of all the testimony defendant made a motion for direction of a verdict as to punitive damages, because plaintiff had failed to make out a case of fraud; that the only inference deducible from the evidence is that of a simple breach of contract for failure to call for the premiums. The motion was refused.

The jury found for the plaintiff in the sum of $174.00 actual damages, and $500.00 punitive damages. Motion for new trial was denied.

The appeal depends upon ten exceptions, but the questions to be determined are not so many.

At the beginning of the trial, respondent's counsel, in response to inquiry, stated in open Court that the action was based on "a fraudulent breach of contract."

It is manifest from the allegations of the complaint that plaintiff founds her charge of "fraudulent breach of contract" upon the statement that:

"The agent of said Insurance Company seeing her condition and realizing that her sickness might result not only in her total and permanent disability, but most likely cause her death, it is alleged, on information and belief, that he, the said agent, thereupon determined to cancel out the said policy and cause same to lapse by failing and refusing thereafter to call for and collect said premiums as had been his custom previous thereto.

"That upon information and belief, it is further alleged that in order to be relieved of its liability under said policy contract, said defendant Insurance Company, its agents, servants, or employees, did forthwith proceed to put into effect its wicked design by wrongfully cancelling out of record said policy, * * * said breach being accompanied by a fraudulent act in the execution of defendant's willful, wicked, and premeditated plan to cheat and defraud plaintiff, as alleged herein."

Let it be conceded, if you wish, that no premiums were collected or paid after February 20, 1933, and that the policy was canceled for the nonpayment of premiums, it was still incumbent on the plaintiff, in order to recover in this action, to show by evidence that these things occurred in pursuance of the fraudulent design to bring about the cancellation of the policy, and to show what fraudulent act accompanied the cancellation. The allegations of the complaint of such fraudulent intent and purpose are not proof; they are mere legal conclusions.

Analyzed, the testimony for plaintiff does no more than show that defendant's agent did not, after February 20, 1933, call at Hyatt Station to collect premiums on the policy, that when plaintiff moved from Hyatt Station, she left instructions with Mrs. Davis to inform the agent that she had moved to Senator Hammond's place out on the old Camden road; that Mrs. Davis gave the agent this information; that plaintiff's brother went to the office of the company in Columbia for the purpose of

paying the premiums due and in arrears, and was informed that they must be paid to Mr. Mullinnix, the agent on whose "debit" the plaintiff was. That plaintiff's brother saw the defendant's agent, Mullinnix, on the highway and gave him the information that his sister had moved to the Pin Branch neighborhood; that when asked why he had not been out to collect premiums, the agent said: "Why you have moved off and I can't find where you live at, * * * I will be out there to see about it."

For the defendant, the evidence shows that on the 20th of February, 1933, the policy of plaintiff was then, in effect, lapsed for nonpayment of premiums; that nevertheless the agent, Mullinnix, alleged by plaintiff to be *deus ex machina* of the design to forfeit and cancel plaintiff's policy accepted from her payments which revived her policy and put it back in force and effect; that the agent made numerous efforts at Hyatt Station to find and collect from plaintiff; and after learning from her brother that she had moved to the Pin Branch section, made three trips there to locate her, but not having any number or definite information of her new place of residence was unable to find her; that the Pin Branch section is outside the corporate limits of the City of Columbia; that when informed by the brother of plaintiff that the plaintiff then resided at the Pin Branch section, defendant's agent offered then to accept the payment of the premiums due, the payment of which would reinstate the policy; that the brother refused to make such payment for the reason that the matter had been put in the hands of an attorney; that the lapse of the policy could not benefit defendant's agent, but, on the contrary, entailed on him a loss of $2.40, which was enforced against him under the rules of the company because he permitted a policy on his debit to lapse; that it was to the interest of the company to keep alive all of its policies.

The evidence fails to show the alleged "fraudulent breach of contract accompanied by a fraudulent act."

It may show a negligent breach of the contract because of inadequate efforts of defendant's agent to ascertain the changed residence of the plaintiff, and to collect the premiums. That would be simple negligence, the proof of which would entitle the plaintiff to recover actual damages.

What is the measure of actual damages in such cases?

The jury found for the plaintiff the sum of $174.00 actual damages, and $500.00 punitive damages. The sum of actual damages was made up of $116.00 the face value of the policy and $58.00 disability.

The verdict cannot stand in this form.

Plaintiff is not entitled to recover the face of the policy, viz., $116.00; this is settled by the decision in the case of *Crosby v. Met. Life Ins. Co.*, 167 S. C., 255, 166 S. E., 266. This sum is only payable upon the death of the insured to her estate, or the named beneficiary. No one can say how long the insured may live, during which time, if she would keep the policy alive, she must pay the premiums.

Nor can plaintiff recover $58.00 on a claim of disability. No such claim is made by the complaint, nor is there a particle of evidence in support of it.

There is no evidence to sustain the verdict for punitive damages. At the time it is sought to show that Mullinnix— the agent of the defendant company—saw the plaintiff ill in bed, and then and there conceived the evil design of causing her to forfeit her policy, it is undisputed that the insured was then in arrears with her premiums, and the policy was lapsed. If the agent desired the forfeiture and cancellation of the policy, he had but to refuse to receive payment of the past-due premiums. Instead he accepted payment of them and thus reinstated the lapsed policy. It is also undisputed that when a policy is lapsed for nonpayment of premiums, the agent upon whose "debit" the policy is listed is penalized by fine by the company. In the instant case Mullinnix, the agent, was fined, and had to pay $2.40 because of the lapse of this policy.

There was evidence of negligence on the part of the agent in and about the collection of the weekly premiums which required that the trial Judge submit that issue to the jury in its relation to actual damages.

What is the measure of actual damages in such case? It is the sum of the premiums which have been paid by the insured, and loss by the lapse of the policy, and, the damage which the plaintiff has sustained by such lapse, to be ascertained, as for example, by ascertaining her life expectancy and the amount she would be required to pay for insurance of like character during such period, but such sum cannot equal the amount of the lapsed policy; and, of course, any special damages which plaintiff has suffered.

For these reasons, the judgment of the lower Court is reversed, and the case is remanded for a new trial in accordance with the views herein expressed.

MR. CHIEF JUSTICE STABLER, MR. JUSTICE CARTER and MESSRS. ACTING ASSOCIATE JUSTICES T. S. SEASE and A. L. GASTON concur.